UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

SOKRATIS G. ANTONIOU,

Debtor.

Case No. 8-12-74788-reg

Chapter 7
---------------------------------------------------------------x
JACOB AGAI, 291 AVENUE P, LLC, and
SUMMERFIELD DEVELOPERS, INC.,

Plaintiffs,

Adv. Proc. No. 8-12-8400-reg

vs.

SOKRATIS G. ANTONIOU,

Defendant.
---------------------------------------------------------------x

**MEMORANDUM DECISION**

Before the Court is a motion for summary judgment by the Plaintiffs, Jacob Agai, 291 Avenue P, LLC and Summerfield Developers, Inc. (collectively, the "Plaintiffs" or "Agai"), seeking judgment as a matter of law that the Debtor, Sokratis Antoniou (the "Debtor" or "Sokratis"), should be denied his discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A) and (a)(5) of the Bankruptcy Code.[1] Although much of the complaint alleges record-keeping, disclosure and accountability failures by the Debtor with respect to an entity, Diontech Consulting, Inc., of which the Debtor was part owner and (alleged) alter ego, the Court finds that the Debtor's failures with respect to his own personal financial affairs warrants denial of the discharge in this case. As such, the Court need not decide whether the Debtor's record-keeping,

[1] All statutory citations are to Title 11, United States Code, unless otherwise indicated.

disclosure and accountability failures with respect to Diontech warrant denial of the discharge on this motion for summary judgment.

The uncontested facts establish that the Debtor failed to keep or preserve recorded information from which his financial condition might be ascertained in that he failed to maintain or preserve personal financial documents beginning mid-2010 and continuing through the bankruptcy filing in July 2012. For these reasons and as more fully explained herein, the Court finds in favor of the Plaintiffs under §727(a)(3).

**Procedural History**

On July 31, 2012 (the "Petition Date"), the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code, and Kenneth Kirschenbaum, Esq. ("Trustee") was subsequently appointed as trustee. On October 23, 2012, the Plaintiffs filed the instant complaint seeking to deny the Debtor's discharge in its entirety and/or seeking to except the Plaintiffs' debt from discharge under §§ 523(a)(2), (4) and (6). The Debtor filed an answer November 21, 2012. On December 11, 2013, Plaintiffs filed a Memorandum in Support of Motion for Leave to Amend the Complaint to add a claim under § 727(a)(2)(A),[2] and for Summary Judgment on Plaintiffs' § 727 claims as to Counts One (§ 727(a)(3)), Two (§ 727(a)(4)(A)) and Three (§ 727(a)(5)). The Debtor filed opposition to the motion on May 25, 2014, and the Plaintiffs filed a reply on May 29, 2014. A hearing on the Plaintiffs' Motion was held June 2, 2014, at which time this matter was taken under submission.

[2] The Plaintiffs' motion seeks to amend the complaint to add a §727(a)(2)(A) cause of action and at the same time seeks summary judgment on that claim. Even if the Court were to permit the amendment and simultaneous summary judgment request, the Court's determination that the Debtor's discharge should be denied under §727(a)(3) is sufficient to deny the discharge, and the Court finds that the motion for leave to amend is thus mooted.

**Facts**

From about 2000 to 2008, the Debtor was a one-third owner of a construction company, Diontech Consulting, Inc. ("Diontech"). (Schedule B, 12-74788-REG, ECF. No. 1.) The other two owners of Diontech were Dennis Mihalatos ("Mihalatos") and Stylianos Antoniou ("Stylianos"), both of whom are also debtors before this Court.[3] In 2007, Plaintiffs sued Diontech and Mihalatos (but not the Debtor and Stylianos) alleging that they suffered damages as a result of Diontech's breach of two construction contracts. (Compl., 12-08400-REG, ECF No. 1 ¶ 1.) On September 19, 2011, after a trial in the Supreme Court of the State of New York, County of Richmond, Justice Dollard issued a decision and awarded the Plaintiffs judgments totaling approximately $5.8 million against Diontech and Mihalatos. (Decl. of Michael Paul Bowen, Ex. 6, 12-08400-REG, ECF No. 18-11.) Plaintiffs subsequently commenced post-judgment proceedings pursuant to Article 52 of the New York Civil Practice Law and Rules to, *inter alia*, pierce the corporate veil of Diontech and hold the Debtor personally liable, jointly and severally, with Diontech and the other Diontech principals, Mihalatos and Stylianos. (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-08400-REG, ECF No. 16 at 7.) The bankruptcy filings by the Debtor, Mihalatos and Stylianos stayed the Plaintiffs' enforcement actions, and so on December 13, 2012, the Plaintiffs sought relief from the automatic stay to pursue the Article 52 proceeding. (Mot. for Relief from Stay, 12-74788-REG, ECF No. 13). The stay was lifted February 11, 2013. (Order Granting Mot. for Relief from Stay, 12-74788-REG,

[3] Mihalatos, the Debtor's brother in law, filed a chapter 7 petition with this Court on February 25, 2013 (Case No. 13-70900-reg.) Stylianos, the Debtor's brother, filed a chapter 7 petition on July 31, 2012 (Case No. 12-45622-cec.) The Plaintiffs, also creditors in the related cases, filed similar §727 complaints against both Mihalatos and Stylianos in adversary proceeding numbers 13-8088 and 12-1299, respectively. On August 14, 2014, Chief Judge Craig issued a Decision and Order granting Plaintiffs' motion for summary judgment against Stylianos denying Stylianos's discharge pursuant to §§ 727(a)(2)(A), (a)(3) and (a)(4)(A), which Order is now final and non-appealable. This Court's decision on Plaintiffs' motion for summary judgment against Mihalatos will be issued simultaneously with this Memorandum Decision.

ECF No. 23.) On August 19, 2013, the state court entered a decision and order piercing the corporate veil and holding the Debtor jointly and severally liable for the $5.8 million judgment against Diontech and Mihalatos. (Decl. of Michael Paul Bowen, Ex. 7, 12-08400-REG, ECF No. 18-12.)

While the Plaintiffs' lawsuit was pending, around the end of 2008, Diontech ceased doing business, and the company was dissolved around 2009. (Pls' EDNY Local Bankr. Rule 7056.1 Statement of Undisputed Material Facts, 12-08400-REG, ECF. No. 17 ¶ 15.) The Diontech general ledgers for 2007 and 2008 show total "loans" to the Debtor in the amount of $29,000. (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-08400-REG, ECF No. 16 at 33.) Diontech's 2008 Tax Returns report cumulative "Loans to shareholders" in an amount of $1,001,768 at the end of the tax year. (Decl. of Michael Paul Bowen, Ex. 33, 12-08400-REG, ECF No. 18-45 at 4.) Despite these documents, the Debtor claims not to have received any "loans" from Diontech and explains that he "believes the funds were payments for services for Diontech." (Sokratis G. Antoniou's Mem. of Law in Opp'n, 12-08400-REG, ECF. No. 29 at 13.)

Prior to bankruptcy, the Debtor was also a part owner of several entities whose business was to buy, improve and re-sell real property. The Debtor admits that he was involved in buying and re-selling at least three houses between 2005 and 2008. *Id.* ¶ 59. The Debtor held a one-third interest in one such entity, 31-72, AMA, LLC, a company formed in or about 2005 to own certain real property in Astoria, New York. *Id.* ¶ 47. Between 2007 and 2010, the Debtor admits to investing "approximately $15,000 to fix the house [owned by 31-71 AMA] so that a certificate of occupancy could be obtained." *Id.* The Debtor admitted that in 2010 he received $36,000 in connection with the sale of a property owned by 31-72 AMA. *Id.* According to the Debtor, he deposited those funds into an account at Atlantic Bank and used them for living expenses. *Id.*

The Debtor did not disclose his interest in 31-72 AMA LLC anywhere in his bankruptcy petition and schedules. Nor did he include the $36,000 distribution he received from that entity in his statement of income for 2010.

The Debtor also did not disclose in his schedules or statements, any interest in an entity called 93 AMA LLC. The Plaintiffs allege that the Debtor held an interest in this entity and in support thereof offer as an exhibit a document, dated July 6, 2007, which purports to bear the Debtor's signature on a "Business Client Profile" submitted to Signature Bank in the name of 93 AMA LLC. The Debtor's name and purported signature appear next to the title "member-manager." (Decl. of Michael Paul Bowen, Ex. 20, 12-08400-REG, ECF. No. 18-30 at 23–24.) The Debtor maintains that this is not his handwriting but rather it appears to be the handwriting of his former business partner, Dennis Mihalatos, (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30, ¶ 18.)

The Debtor did disclose on Schedule B that he held a one-third interest in an entity called 24-65 AMA LLC, which owned certain real property, also in Astoria. According to the Debtor, the real property owned by 24-65 AMA LLC was in foreclosure and the building had no certificate of occupancy. Although the Debtor included this entity on Schedule B, he did not include his role in this entity in response to Question 18 of the Statement of Financial Affairs which requires a Debtor to disclose the nature, name and location of any business in which the debtor was an officer, director, partner, or managing executive, within the six years prior to bankruptcy.

After the dissolution of Diontech, in 2009, the Debtor was employed by a company called Four Builders that maintained offices at the same location previously occupied by Diontech. The

Debtor claims that he had no ownership interest in Four Builders; that he was paid a salary by check; that he cashed these checks at a bank; but has no documentation of his employment or salary from Four Builders. *Id.* ¶ 43.

From 2010 to 2013, the Debtor stated that he did not maintain any bank accounts, that he was paid in cash and that he "kept track of his finances by keeping notes as well as by memory." *Id.* ¶ 5. He claims to have no record of his earnings and after completing his taxes, he discarded his notes thinking he would never "have a need for [the] records." *Id.* In response to the instant summary judgment motion, May 25, 2014, the Debtor attached as exhibits to his affidavit, unsigned tax returns for the years 2010, 2011, 2012 and 2013 and bank records from TD Bank for 11 months – September 2009 to July 2010. *Id.* ¶ 6.

On July 31, 2012, the Debtor sought relief under the Bankruptcy Code and submitted to the Court his petition, schedules and Statement of Financial Affairs, all under oath. (Chapter 7 Petition, 12-74788-REG, ECF No. 1.) The Debtor reported assets with a value of $3,525 and over $5 million in unsecured debt, much of that debt related to Diontech. On Schedule I, he reported that he was a "self-employed" "handyman" earning approximately $26,000 per year.

## Discussion

### Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states, in pertinent part, that summary judgment is appropriate, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] In ruling

[4] Rule 56 governs the motion for summary judgment in this adversary proceeding by virtue of Fed. R. Bankr. P. 7056.

upon a summary judgment motion the Court must determine whether a genuine issue of fact exists, not resolve disputed issues of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell* (*In re Jarrell*), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citing *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990)), *cert. denied*, 540 U.S. 811 (2003).

**1. Denial of Discharge under 11 U.S.C. § 727**

It is well-settled law that the denial of a debtor's discharge is a drastic remedy that "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F .3d 1300, 1310 (2d Cir. 1996) (quoting *Bank of Pa. v. Adlman* (*In re Adlman*), 541 F.2d 999, 1003 (2d. Cir.1976)). However, a bankruptcy discharge is a privilege, not a right, and may only be granted to the honest debtor. *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *See Minsky v. Silverstein* (*In re Silverstein*), 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005. Plaintiffs seek denial of Debtor's discharge under §§ 727(a)(3) (failure to keep or preserve books and records), 727(a)(4)(A) (false oath), and 727(a)(5) (failure to explain loss or deficiency of assets). The Plaintiffs need only

succeed under one sub-section of § 727(a) for the discharge to be denied. *In re Handel*, 266 B.R. 585, 588 (Bankr. S.D.N.Y. 2001).

The undisputed facts in this case show that the Debtor failed to keep or preserve any records relating to his finances for the two years preceding his bankruptcy filing which makes it impossible to ascertain his financial condition. As a result, summary judgment is warranted under § 727(a)(3).

**a. Count 1—denial of the Debtor's discharge under § 727(a)(3)**

Section 727(a)(3) provides that a debtor shall not be granted a discharge if the debtor has "concealed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this section is to make discharge "dependent on a true presentation of the debtor's financial affairs." *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (internal quotations omitted) (other citations omitted). The Debtor must provide enough information "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions," as required by § 727(a)(3). *Schackner v. Breslin Realty Dev. Corp.*, No. 11–CV–2734 (JS), 2012 WL 32624, at *4 (E.D.N.Y. Jan. 5, 2012). Lacking an intent element, § 727(a)(3) establishes a two-step, burden-shifting approach that makes adequate record-keeping a predicate for a debtor's discharge. *In re Cacioli*, 463 F.3d at 235 (*citing White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir. 1941)); *Jacobowitz v. Cadle Co*. (*In re Jacobowitz*), 309 B.R. 429, 436 (S.D.N.Y. 2004).

**i. Inadequate Records: Plaintiffs' Burden under § 727(a)(3)**

First, the plaintiff must prove "that the debtor failed to keep [or] preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *In re Cacioli*, 463 F.3d at 235. The "adequacy" of a debtor's record-keeping is measured by utilizing eight non-exhaustive factors: (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the dollar amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience, and sophistication; (5) the customary business practices, for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor. *State Bank of India v. Sethi* (*In re Sethi*), 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) ("*Sethi*"); *see also In re Cacioli*, 463 F.3d at 236 n.9 (clarifying that the *Sethi* test is to be used for determining the adequacy of a debtor's records and not for judging the credibility of his or her justification). To meet its initial burden of proving that a debtor has not supplied the substantially complete and accurate records required by § 727(a)(3), a creditor may show either (1) the inadequacy of the provided records in accordance with *Sethi*, or (2) the impossibility of ascertaining "the debtor's present financial condition and the nature of any business transaction that occurred within a reasonable period prior to filing" from the tendered records. *In re Sethi*, 250 B.R. at 837–38.

The Court finds that the Plaintiffs have satisfied their burden under either standard. The Court first analyzes the *Sethi* factors. Although the Debtor maintains that as of the date of the bankruptcy petition he was merely a self-employed handyman, he does admit to previously having been in the business of flipping houses and doing so with partners through more than one

limited liability companies. He also admits to being a one-third partner in a construction company, Diontech, that had $16 million in annual revenues prior to its demise in 2009. The Debtor incurred significant personal liability for Diontech's debts.

The Debtor's involvement in these business ventures and his liability for significant business debt weigh against him under the *Sethi* factors. However, even applying the lowest threshold for personal record-keeping, the Debtor fails. The Debtor does not dispute that he failed to keep or preserve *any* recorded personal financial information for the two years preceding his bankruptcy filing, and he admits that the failure to keep records was entirely of his own doing – that he did not believe he needed to keep records. The records the Debtor did keep, and turned over, shed little to no light on the Debtor's financial condition as of the date of the bankruptcy filing.

Before the Plaintiffs instituted the present adversary proceeding, the Debtor produced virtually little or no documentation regarding his personal finances. Despite previous discovery requests for documents relating to the Debtor's financial affairs, it was only in response to the summary judgment motion that the Debtor turned over unsigned tax returns for the years 2010, 2011, 2012 and 2013, and bank records from TD Bank for September 2009 to July 2010. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 6.) However, these records are insufficient to defeat a § 727(a)(3) claim. The bank statements turned over are for less than a one year period ending more than two years prior to the bankruptcy filing. In addition, the bank statements only show the Debtor's account summary and activity for the relevant time period (Sokratis G. Antoniou's Aff. in Opp'n, Ex. 3, 12-08400-REG, ECF. No. 30-3.) The Debtor has provided no corresponding information about the source or use of the funds in the account.

The tax returns turned over by the Debtor are also insufficient to defeat the Plaintiffs' claims under § 727(a)(3). The tax returns are unsigned, and the Court has been provided with no evidence that the tax returns were ever filed. Even if they were signed and filed, the Debtor has not provided any pay stubs, W-2 or Form 1099 documents. The Debtor asks this Court to find that his turnover of tax returns satisfies his record-keeping duties with respect to his income. However, tax returns alone "are wholly insufficient for . . . a creditor to ascertain the debtor's financial condition." *In re Sethi*, 250 B.R. at 839.

The Debtor also admits that he failed to keep any records related to his salary while working for Four Builders in 2009, and Zeus Construction in late 2011 and early 2012. Though he claims he was paid by check and he cashed his paychecks at a bank, he offers no documentation of this. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 43.) The Debtor's affidavit filed in opposition to the instant motion for summary judgment states that he requested bank statements from this time period but none appear to have been turned over. *Id.* ¶ 6. Similarly, he has provided no evidence of the salary paid to him by Zeus Construction in 2011 and 2012. He merely explains that the income was reported on his tax returns. That is not enough to satisfy § 727(a)(3).

The Debtor has produced *no* financial records (except the unsigned tax returns) for the *two years* immediately preceding his bankruptcy filing. Based on all of the foregoing, the Court finds that the Plaintiffs have satisfied their burden under § 727(a)(3) by showing that the Debtor failed to keep adequate records from which his financial condition or business transactions might be ascertained.

**ii. Justification: Debtor's Burden under § 727(a)(3)**

Once the plaintiff satisfies its burden under part one, the burden shifts to the debtor to justify the absence of comprehensive records under all relevant circumstances. *In re Cacioli*, 463 F.3d at 233. The acceptability of a debtor's justification "depends largely on what a normal, reasonable person would do under similar circumstances." *D.A.N. Joint Venture v. McCormack* (*In re McCormack*), No. 06–1053, 2007 WL 642945, at *1 (2d Cir. Feb. 27, 2007). As to the credibility of a debtor's "justification," the following factors may be relevant:

> the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*In re Cacioli*, 463 F.3d at 237 (*quoting Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1991)). A debtor's stated justification will satisfy § 727(a)(3) if enough evidence exists "to 'convince the court of [the debtor's] good faith and businesslike conduct.'" *In re Joseph*, Civ. A. No. 91-CV-1114, 1992 WL 96324, at *4 (N.D.N.Y. Apr. 22, 1992) (citation omitted). "Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep." *In re Sethi*, 250 B.R. at 839 (Bankr. E.D.N.Y. 2000) (citing *In re Caulfield*, 192 B.R. 808, 823 (Bankr. E.D.N.Y. 1996)).

The Debtor's defense to the Plaintiffs' claim under § 727(a)(3) is three-fold. First, he argues that he is not a sophisticated business person and his failure to keep adequate records is justified under the circumstances. The Debtor states that he never finished high school and his ability to read and write English is poor. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 4.) Even accepting the Debtor's characterization of himself as an unsophisticated

businessman as true, the Court finds that to be no excuse for the *complete* failure of record-keeping by this Debtor for the two years prior to bankruptcy.

Second, the Debtor asserts that the Plaintiffs seek to hold the Debtor "accountable for maintaining records [that] go back beyond a reasonable period for ascertaining" the Debtor's present financial condition. (Sokratis G. Antoniou's Mem. of Law in Opp'n, 12-08400-REG, ECF. No. 29 at 8.) The Debtor makes much of the Plaintiffs' demand for Diontech records that he maintains do not "bear on [his] inability to pay his debts *as of the filing date of the petition*." *Id.* at 9 (emphasis in original.) However, the Debtor can hardly argue that requiring a debtor to keep financial records for the two years preceding a bankruptcy petition is unreasonable; a two year look back period would satisfy even the most liberal approach to "reasonableness" in this context.

Finally, the Debtor also argues that he has turned over to the Plaintiffs all of the financial records he has retained. There is a dearth of records, he says, because from 2010 to 2013, he was paid in cash and he "kept track of his finances by keeping notes as well as by memory." (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 5.) He claims to have no record of his earnings and after completing his taxes he discarded his notes thinking he would never "have a need for [the] records." *Id.* However, an honest belief by a debtor that he did not need to keep records does not constitute justification for failing to keep or preserve records under § 727(a)(3). *In re Sethi*, 250 B.R. at 839; *In re Pimpinella*, 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991); *In re Delancey*, 58 B.R. 762, 769 (Bankr. S.D.N.Y. 1986); *In re Sandow*, 151 F.2d 807, 809 (2d Cir. 1945). In order to qualify for a discharge, § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his financial affairs." *In re Self*, 325 B.R. 224, 241 (Bankr. N.D. Ill. 2005).

Without complete and accurate information regarding the Debtor's pre-petition financial history, it is impossible to ascertain the Debtor's financial condition. Though the result may be harsh, "[c]omplete disclosure is in every case a condition precedent to the granting of the discharge, and [] such a disclosure is not possible without the keeping of books or records." *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936).

The Court finds that the Plaintiffs have satisfied their burden by establishing a *prima facie* case that the Debtor failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained, and the Debtor has failed to show that such failure was justified under all of the circumstances. Thus, the Debtor's discharge shall be denied pursuant to § 727(a)(3).[5]

**b. Count 2—denial of the Debtor's discharge under § 727(a)(4)(A)**

Section 727(a)(4)(A) provides: "The court shall grant the debtor a discharge, unless— (4) the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account." Under this section, the party objecting to discharge must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Moreo*, 437 B.R. 40, 59 (E.D.N.Y. 2010). The overall burden of proof, including the burden of showing actual fraudulent intent, remains with the Plaintiff. *Id.* After the objecting party meets its burden by

---

[5] Plaintiffs also seek to deny Debtor's discharge for his failures to keep Diontech records asserting that "[t]he missing, suppressed and/or destroyed business and financial records [of Diontech] are directly relevant to the debtor's financial condition." (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-08400-REG, ECF No. 16 at 22.) The Court will not address these arguments as the Debtor's failures with regard to his own personal records are sufficient to deny his discharge.

showing that a debtor made false statements, "the burden of production shifts to the debtor to produce a 'credible explanation.'" *Id.*

Fraudulent intent can be proven by either (1) evidence of a debtor's actual intent to deceive or (2) indicia of his reckless indifference to the truth. *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014). Recognizing that fraudulent intent is rarely susceptible to direct proof, courts have crafted "badges of fraud" which may be used to establish the requisite actual intent to defraud.[6] *Bub*, 516 B.R. at 694 (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir.1983)). "With respect to reckless indifference to the truth, the Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and [omissions] contained in the schedules." *Bub*, 516 B.R. at 694. One single false oath or account may be sufficient to deny a debtor's discharge. *TD Bank, N.A. v. Nazzaro* (*In re Nazzaro*), No. 810–74869, 2013 WL 145627, at *6–7 (Bankr. E.D.N.Y. Jan. 13, 2013).

**False statements and omissions**

The Court finds that based on the undisputed facts presented in this case, the Debtor failed to disclose, on his schedules and Statement of Financial Affairs, his ownership interest and involvement with at least one corporate entity in which he admits to having an interest. It is also undisputed that the Debtor misstated his 2010 income in his petition.

Question 18 on the Statement of Financial Affairs requires a debtor to list the businesses in which he was an "officer, director, partner, or managing executive of a corporation . . . within the last six years." In response to question 18, the Debtor checked the box that answers "none"

---

[6] "'Badges of fraud' include secreting proceeds of a transfer, transferring property to family members, the lack or inadequacy of consideration, the general chronology of the events or transactions in question, and the concealment of relevant facts." *Bub*, 516 B.R. at 694.

despite having admitted to holding such a position in Diontech within the six years preceding the bankruptcy filing. In addition, Section 13 of Schedule B requires a debtor to list "stock and interests in incorporated and unincorporated businesses." For section 13, the Debtor listed three businesses: 24-65 AMA LLC, Diontech Consultants, and New York Fashion, Inc. The Debtor failed to include his interest in 31-72 AMA LLC, an entity in which he admitted to having a one-third ownership interest within the relevant time period. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 47.)

In connection with the allegation that the Debtor had an ownership and/or managerial role in 93 AMA, LLC which he did not disclose, the Plaintiffs offer an exhibit that shows the Debtor's name, signature and the title "member-manager" on a client profile for Signature Bank. (Decl. of Michael Paul Bowen, Ex. 20, 12-08400-REG, ECF No. 18-30.) The Debtor addresses this exhibit by stating the handwriting on the form is not his and that he recognizes it to be Dennis Mihaltos's handwriting. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 ¶ 18.) Although the Debtor disputes the authenticity of his signature, he does not specifically deny his involvement or interest in 93 AMA, LLC. Nonetheless, for purposes of this motion for summary judgment the Court finds that the Debtor's interest in 93 AMA, LLC is a material fact which is in dispute. [7]

Debtor explains that his failure to list his interests in certain entities, including, but not clearly limited to, 31-72 AMA, was based on the advice of his bankruptcy counsel. He states that he informed counsel that "the AMA entities" had no assets and relied on him to fill in the

[7] The Plaintiffs also allege that the Debtor held an interest in Four Builders evidenced by his admitted check-writing authority for that company. The Debtor admits that "the owner [of Four Builders] gave [him] check writing authority," but denies that he was an owner of Four Builders. (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 at ¶ 43.) Because the Debtor's ownership interest in Four Builders is a material fact in dispute, it will not factor into this Court's consideration of this motion for summary judgment.

correct information on the bankruptcy petition and schedules. *Id.* ¶ 56. However, a debtor's unfounded belief that an asset had no value is insufficient as a defense to a claim under § 727(a)(4)(A). *In re Nazzaro*, 2013 WL 145627, at *8 (citing *Sergent v. Haverland* (*In re Haverland*), 150 B.R. 768, 771 (Bankr. S.D. Cal. 1993)). Nor is reliance on the advice of counsel an absolute defense to blatant disclosure failures. That said, such reliance might, under the right facts, tend to negate a finding of fraudulent intent or recklessness. *In re Dubrowsky*, 244 B.R. 560, 575 (E.D.N.Y. 2000).

In addition to failing to disclose his interest in 31-72 AMA, the Court finds that the Debtor understated his 2010 income on his petition by at least $36,000. In 2010, the Debtor admits that he received $36,000 in connection with the sale of the real property owned by 31-72 AMA, (Sokratis G. Antoniou's Aff. in Opp'n, 12-08400-REG, ECF. No. 30 at 11), yet in the Debtor's petition, he indicates that his gross income for 2010 was estimated to be $15,000, (Statement of Financial Affairs, 12-74788-REG, ECF. No. 1), which clearly fails to account for income from 31-72 AMA.

Based on the undisputed facts the Court finds that the Debtor failed to disclose in his bankruptcy petition, schedules and statements, his interest in 31-72 AMA, and at least $36,000 in income from 2010. The Court is also prepared to find that the Debtor's omissions were knowing. His "advice of counsel" defense is unavailing in this respect. However, in order to find that denial of discharge is warranted under § 727(a)(4)(A), the Court must also find that these omissions were done with fraudulent intent, or the Debtor exhibited "reckless indifference to the truth." The Court is not prepared, on summary judgment, to make either finding. The question of fraudulent intent under § 727(a)(4)(A) may in some cases be answered on summary judgment, but "courts must be cautious in such cases." *In re Adler*, 395 B.R. 827, 843 (E.D.N.Y. 2008).

Although the Plaintiffs cite to this Court's previous decisions in *In re Nazzaro*, *In re Adler*, and *In re Parikh*, those cases are distinguishable on their facts, and more importantly, in that they were decided after trial, not on summary judgment.

Viewing the evidence in the light most favorable to the Debtor, and recognizing that summary judgment on a § 727(a) claim, particularly those that require any intent element should not be easily granted, the Court finds that summary judgment on the Plaintiffs' cause of action under § 727(a)(4)(A) will be denied.

### c. Count 3—denial of the Debtor's discharge under § 727(a)(5)

Section 727(a)(5) provides the basis to deny a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The purpose of this section is to deter and punish debtors from "abus[ing] the bankruptcy process by obfuscating the true nature of their affairs, and then refusing to provide a credible explanation." *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994). Like § 727(a)(3), this paragraph contains no intent requirement and creates a two-part burden-shifting analysis. *In re Cacioli*, 463 F.3d at 238. First, a plaintiff must show a loss or deficiency of assets. *Id*. Once the plaintiff makes this showing, the debtor must explain the whereabouts of the assets. *Id.*

#### i. Missing Assets: Plaintiffs' Burden under §727(a)(5)

To carry the initial evidentiary burden under § 727(a)(5), a plaintiff must establish that: (1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) those assets have disappeared, their disposition or placement now unknown; and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by

the debtor. *See, e.g.*, *Adams v. Inzero* (*In re Inzero*), 426 B.R. 428, 432 (Bankr. D. Conn. 2009) (citing *In re Cacioli*, 463 F.3d at 238); *Jiminez v. Rodriguez* (*In re Rodriguez*), No. 05–19599, 2008 WL 3200215, at *2–3 (Bankr. S.D.N.Y. 2008) (quoting 6 Collier on Bankruptcy ¶ 727.08 (15th ed. rev.1995)).

The bulk of the Plaintiffs' arguments in support of their § 727(a)(5) claim relate to the loss of substantial Diontech assets. However, as previously explained, the Court will not address, on summary judgment, the § 727(a) claims in the context of the Debtor's failures with respect to Diontech assets. With respect to the loss or deficiency of assets by the Debtor, the Plaintiffs allege that there were substantial "loans to shareholders" which are unaccounted for by the Debtor and his partners. The Plaintiffs have shown that the Debtor received approximately $29,000 from Diontech Consulting during 2007 and 2008, which was characterized on Diontech's books as "loans." (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-08400-REG, ECF No. 16 at 33.) The Debtor disputes having received any "loans" and argues that any funds paid to him by Diontech were for salary. (Sokratis G. Antoniou's Mem. of Law in Opp'n, 12-08400-REG, ECF. No. 29 at 13.) Although the characterization of these advancements as salary versus loans may be important in another context, regardless of how they are characterized for purposes of this § 727(a)(5), the Court is not prepared to find that $29,000 paid to the Debtor over two years is "substantial," especially when considered in the context of the liability to these Plaintiffs of over $5 million.

Thus, the Court finds that the Plaintiffs have not sustained their burden of proving, on the undisputed facts presented in the summary judgment motion, an unexplained loss or deficiency of the Debtor's assets. Summary judgment with regard to the Plaintiffs' § 727(a)(5) claim will be denied.

## Conclusion

For the foregoing reasons, summary judgment is granted in favor of the Plaintiffs on their § 727(a)(3) claim, and the Debtor's discharge is denied. The Court shall enter judgment consistent with this Memorandum Decision forthwith.

Dated: Central Islip, New York
March 3, 2015

***/s/ Robert E. Grossman***
Hon. Robert E. Grossman, U.S.B.J.